Filed 4/14/15  P. v. Hernandez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDRES C. HERNANDEZ,<br><br>    Defendant and Appellant. | D065846<br><br><br><br>(Super. Ct. No. SCN319924) |


APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.


Law Offices of Russell S. Babcock and Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Andres C. Hernandez guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] with the further finding that Hernandez personally used a dangerous and deadly weapon (§ 1192.7, subd. (c)(23)); resisting an executive officer (§ 69); battery (§ 242); being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)); and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)). The trial court made a true finding that Hernandez incurred a prior strike (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony (§ 667.5, subd. (b)), and sentenced Hernandez to prison for 14 years four months.

Hernandez contends that the trial court abused its discretion by denying his posttrial motion to obtain juror identifying information. We concluded that Hernandez's contention lacks merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

While under the influence of methamphetamine, Hernandez got into a violent altercation with two of his brothers, with whom he shared a residence. Hernandez first punched and shoved his brother Elias[2] shortly after Elias returned home from work in the afternoon. Elias retreated to his car, locked the door and called 911 while Hernandez was violently punching the car. Hernandez's brother Steven then intervened by trying to pull

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     Because the brothers share the same last name, for the sake of clarity we will refer to Hernandez's brothers by their first names, and we intend no disrespect by doing so.

Hernandez away from the car. Hernandez started punching Steven, who was walking with a crutch because of a broken ankle. Hernandez grabbed Steven's crutch, hitting Steven with the crutch four times while Steven was on the ground, and then continued to punch Steven. Neighbors intervened by pulling Hernandez off Steven and tackling Hernandez.

Sheriff deputies arrived in response to the 911 call. Hernandez was agitated and yelling profanities after the deputies handcuffed him. While a deputy was in the process of moving Hernandez to the patrol car, Hernandez jumped up into the air, placed his legs straddling the officer's legs, violently twisted his body, and attempted to roll. The deputy identified the maneuver as a technique used by prisoners to injure an officer's legs.

Hernandez was charged with assault with a deadly weapon (§ 245, subd. (a)(1)), with the further allegation that he personally used a dangerous and deadly weapon (§ 1192.7, subd. (c)(23)); resisting an executive officer (§ 69); battery (§ 242); being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)); and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)). The jury found Hernandez guilty on all counts, and the trial court made a true finding that Hernandez incurred a prior rape conviction (§ 261, subd. (a)(2)) that was a prior "strike" under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony (§ 667.5, subd. (b)).

After trial, but before sentencing, Hernandez filed an application for an order disclosing the jurors' addresses and telephone numbers. The motion was based on the

3

fact that the court clerk had received two phone calls from a juror after the verdict inquiring about Hernandez's sentencing status.

The first telephone call from the juror was brought to counsel's attention by the trial court in an informal and unreported discussion on November 13, 2013. Although no reporter's transcript was prepared for the informal discussion, at a hearing on November 20, 2013, the trial court described for the record the content of the first telephone call from the juror. Specifically, in a telephone call to the clerk, the juror indicated that "he had conversations with another juror. The other juror had done research and had indicated to the caller that Mr. Hernandez had a serious criminal history and therefore that was why they were interested in the sentencing."

At a hearing the next day, November 21, the trial court reported to counsel that the same juror called a second time to find out the date of the sentencing hearing, and during that conversation the juror gave further information about the research that his fellow juror had conducted on Hernandez's criminal history. As the trial court explained, the juror stated to the clerk that his fellow juror conducted the research on Hernandez *after* the trial was over and did no research *during* trial.

Hernandez's motion, filed January 8, 2014, sought the release of juror identifying information so that defense counsel could interview jurors to determine whether Hernandez's prior criminal history was discussed during trial. The trial court denied the motion, ruling that Hernandez had not made a prima facie case for the release of the juror identifying information as there was no indication that any juror considered improperly obtained information prior to the verdict.

## II.

## DISCUSSION

Hernandez's sole contention on appeal is that the trial court improperly denied his motion for the release of juror identifying information.

As applicable here, the law provides that after the recordation of a jury's verdict in a criminal jury proceeding, the court's record is sealed, with all personal identifying information of trial jurors removed from the court record. (Code Civ. Proc., § 237, subd. (a)(2)-(3).) Under Code of Civil Procedure section 206, subdivision (g), "a defendant or defendant's counsel may . . . petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." (*Ibid.*)

Code of Civil Procedure section 237, subdivision (b) sets forth the standard by which a petition for release of juror information is evaluated. "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure. A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm." (*Ibid.*)

5

A prima facie case of good cause is shown "if the defendant sets forth a sufficient showing to support a reasonable belief that jury misconduct occurred." (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 552 (*Rhodes*); see also *People v. Carrasco* (2008) 163 Cal.App.4th 978, 990 (*Carrasco*) ["Even though *Rhodes* was decided before the statute's present enactment requiring a showing of good cause, the *Rhodes* test survived the amendments."].) To establish good cause "the defendant . . . has to prove that talking to the jurors is reasonably likely to produce admissible evidence of juror misconduct." (*People v. Johnson* (2013) 222 Cal.App.4th 486, 493.) "This rule safeguards both juror privacy and the integrity of our jury process against unwarranted 'fishing expeditions' by parties hoping to uncover information to invalidate the jury's verdict." (*Rhodes*, at p. 552.)

If the trial court decides that the petitioning party has made a prima facie showing of good cause for the release of the juror identifying information, and there is no other compelling interest against disclosure, jurors are given notice of the proposed release of information and an opportunity to protest, and a hearing is held to determine whether to release the information. (Code Civ. Proc., § 237, subd. (c).)

A trial court's decision that a defendant has not made a prima facie showing of good cause for the release of juror identifying information is reviewed for abuse of discretion. (*Carrasco*, *supra*, 163 Cal.App.4th at p. 991.)

Here, the trial court denied Hernandez's petition for the release of juror identifying information on the ground that he did not make a prima facie showing of good cause because there was no indication of any juror misconduct warranting a factual

6

investigation. As we will explain, the trial court did not abuse its discretion in reaching that conclusion.

It is well settled that a juror commits misconduct by conducting independent research during a trial. (See, e.g., § 1122, subd. (a)(1); *People v. Ledesma* (2006) 39 Cal.4th 641, 743.) "It is absolutely forbidden for jurors to do their own investigation outside the courtroom." (*People v. Vigil* (2011) 191 Cal.App.4th 1474, 1483.) However, these restrictions apply only during trial, and as the trial court expressly instructed the jurors in this case, they were free to discuss the case after being dismissed from jury service.

Here, there was no indication of any juror research done during trial. The juror who called the clerk expressly stated during the second telephone call that his fellow juror had looked into Hernandez's criminal background only *after* the verdict. Based on those facts, Hernandez did not "set[] forth a sufficient showing to support *a reasonable belief* that jury misconduct occurred" (*Rhodes*, *supra*, 212 Cal.App.3d at p. 552, italics added), as it was purely *speculative* to believe that the jurors might have conducted outside research prior to the verdict. (*People v. Wilson* (1996) 43 Cal.App.4th 839, 852 [defense counsel's "speculative account" of how the jurors may have reasoned about the case did not establish a prima facie showing of good cause for the release of juror identifying information].) Hernandez argues that he should have been permitted to contact the jurors to *verify* that no outside research was done during trial, but this argument fails. Because the juror did not say anything to the court clerk even remotely suggesting improper research during trial, there was no good cause to contact the juror to

7

*verify* that no such research occurred. Accordingly, the trial court was within its discretion to conclude that Hernandez did not establish a prima facie showing of good cause for release of juror information.

Hernandez contends that the trial court abused its discretion because it did not apply the correct legal standard when ruling on the motion for release of juror contact information.[3] Specifically, based on the trial court's wording of its ruling at the motion hearing in which the trial court stated "I don't find there's any misconduct," Hernandez contends that the trial court improperly examined whether Hernandez *established* juror misconduct rather than whether Hernandez made a *prima facie case* of good cause for the release of juror information so that he could investigate juror misconduct. We disagree.

Looking at the trial court's entire statement in context, it is clear that the trial court understood the correct legal standard and applied it. As the trial court summarized its ruling, "Given that there was no information that anything occurred prior to the verdict in this case, I don't find there's any misconduct, therefore, I don't find a prima facie case has been made." This statement shows that the trial court was properly focused on whether Hernandez had made a prima facie showing of good cause, and that in referring to whether misconduct occurred, the trial court was simply examining whether the scenario described by the juror to the clerk indicated that a juror had potentially done anything

---

3    Hernandez also contends that the trial court's purported error in applying an incorrect legal standard violated his rights to due process and compulsory process under the Sixth and Fourteenth Amendments to the United States Constitution. Because we conclude that the trial court applied the proper standard in ruling on the motion for release of juror identifying information, we also reject the constitutional argument.

improper warranting further investigation.  Finding that the scenario did not constitute improper juror activity, the trial court concluded that Hernandez had not made a prima facie showing to warrant release of juror identifying information.  Indeed, a prima facie showing of good cause is defined as "a sufficient showing to support a reasonable belief that jury misconduct occurred."  (*Rhodes*, *supra*, 212 Cal.App.3d at p. 552.)  Applying this standard, the trial court properly conducted its analysis of whether Hernandez had made a *prima facie showing of good cause* by focusing on whether there was any suggestion of *misconduct* in what the juror reported during his telephone calls to the clerk.

DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

9